# LAW OFFICES OF JOEL B. RUDIN, P.C.

CARNEGIE HALL TOWER
152 WEST 57TH STREET
EIGHTH FLOOR
NEW YORK, NEW YORK 10019

TELEPHONE: (212) 752-7600
FACSIMILE: (212) 980-2968
E-MAIL: jbrudin@rudinlaw.com

JOEL B. RUDIN

HARAN TAE
JACOB "COBY" LOUP

GEORGE R. GOLTZER
(OF COUNSEL)

November 20, 2019

**By ECF**
Honorable Steven L. Tiscione, Magistrate Judge
United States District Court, Eastern District of New York
225 Cadman Plaza East
Brooklyn, New York 11201

    Re:    *Taylor v. City of New York, et al.*
               18-cv-5500 (NG)(ST)

Dear Judge Tiscione:

      This office represents Plaintiff Rhian Taylor in this § 1983 action. This motion seeks to compel discovery of NYPD and Queens D.A. records requested in Plaintiff's first discovery demand of April 12, 2019 (*see* Ex. A). Defendants formally responded May 22 (*see* Ex. B). Defendants initially provided a privilege log for the Queens DA's records September 13 and, after Plaintiff's requests, a more detailed privilege log on November 13 (*see* Ex. C). As noted below, this privilege log remains vague in important respects. Counsel have made numerous attempts but have been unable to resolve the numerous and significant issues, involving almost 5,000 pages of discovery, addressed below.

## Facts of the Case

      In brief, Plaintiff's Complaint alleges that he was wrongfully prosecuted for, and convicted of, the August 11, 2007, shooting murder of a young man named Darion Brown outside the location of a house party in Laurelton, Queens. It alleges a *Brady* violation by the assigned detective (withholding eyewitness descriptions that were inconsistent with the Plaintiff's appearance and their trial testimony) and myriad *Brady* violations by the trial prosecutor, ADA Karen Ross, caused by the policies, customs and practices of the Queens DA. Plaintiff was convicted in March 2010, based upon the eyewitness testimony of two young men, Anthony Hilton and Seprel Turner, who drove to the scene in Brown's car to "crash" the party. The conviction was reversed on appeal. In preparing for retrial, the defense uncovered numerous items of *Brady* material, contradicting the witnesses' false testimony, showing undisclosed benefits they received, or demonstrating their underlying criminality and dishonesty, which Ross wrongfully failed to disclose at the first trial, as well as additional evidence of Turner's criminality (including his perjury conviction and three arrests for pimping out the mother of his child as well as his girlfriend

Law Offices of Joel B. Rudin, P.C.

Hon. Steven Tiscione
November 20, 2019
Page 2

using his sister's identification, among others) which Ross knew, or should have known, about but did not disclose at the second trial. Plaintiff was fully acquitted on January 31, 2017.

During discovery in this and a parallel State Court of Claims action, Plaintiff has uncovered additional *Brady* violations by Ross. While presenting the two witnesses as cooperative to avenge the murder of their friend, she suppressed that they refused to comply with subpoenas, had to be arrested on material witness warrants, that Hilton (contrary to his and Turner's trial testimony) told the court at a material witness hearing that he and his friends had been intoxicated at the time of the shooting and he only knew what he had "heard," that he was jailed when he told the judge he would not testify, that the judge threatened him with a perjury prosecution, and that when he testified in the grand jury later that day he was in the actual custody of D.A.'s investigators. Further, Det. Bey has testified that ADA Ross told him, before the first trial, that NYPD had listed Turner as a leader of a violent gang, she made no investigation except to elicit Turner's denial, and she never disclosed this information either.

## Discovery Requested

### I.  NYPD and QDAO Records on Gang Affiliation of Anthony Hilton and Seprel Turner (Document Request No. 12)

ADA Ross and Detective Bey have both testified that Ross was informed by the NYPD that Turner was believed to be a leader of the violent SNOW gang. Undersigned counsel has subsequently learned through investigation that Hilton allegedly was a member of the "I Got Money," or "IGM" gang, which a police report states was involved in a run-in with the decedent shortly before the shooting. Plaintiff's theory at both trials was that Hilton, whose blood was found on the decedent's vehicle after the shooting, was the likely assailant following a dispute he had with the decedent over a girl.

Plaintiff seeks disclosure of documents concerning the alleged gang affiliations of Hilton and Turner. Such records, presumably in the possession of the NYPD and possibly in the DA's files, would show the extent and significance of Ross's *Brady* violation, potentially implicate Hilton in the shooting, and undermine the credibility of Turner, who remains a potential witness in this action. Defendants object to this request as "vague and ambiguous," but what we're seeking is clear. They express concern about nonparty privacy and safety, but Hilton, after being involved in three shootings, was killed years ago, whereas Turner has now publicly testified twice, has no legitimate interest in shielding his gang involvement from disclosure, and, in any event, the disclosure would be subject to the confidentiality order.

LAW OFFICES OF JOEL B. RUDIN, P.C.

Hon. Steven Tiscione
November 20, 2019
Page 3

### II.  NYPD and QDAO Records on Hilton's 2011 Shooting Death and Turner's 2014 Slashing (Document Request Nos. 4 & 8; PRIV 55 & 61)

During the second trial, Ross insinuated that Plaintiff, although imprisoned, somehow was responsible, through "associates," for Hilton's murder in 2011 and an incident at a motel where Turner was slashed in 2014. She never disclosed any evidence supporting these insidious and harmful assertions. Plaintiff believes there is no such evidence and they were made in bad faith. We seek the police and D.A. materials concerning these two incidents to show that. Such evidence would support our *Monell* claim by showing Ross's ongoing use of false "evidence" and allegations and would relate to her credibility; she is an essential witness in this action. We also are entitled to the materials because information in them may be used to attack our client's credibility in this lawsuit.

Defendants object on the basis of relevancy, a frivolous objection, and law enforcement privilege because the two incidents remain unsolved. Defendants have not shown there is any active investigation into either of these cold cases, or that any individual's safety would be endangered—Hilton is deceased, and Turner has already testified about the slashing incident in open court, almost three years ago, at Plaintiff's retrial. Contemporaneous police reports we do have quote Turner as saying he was face down and neither saw nor could identify his assailant; the suggestion that disclosure of the records would endanger any person or investigation is hollow. The law is clear that a conclusory statement that a "case" technically remains "open," without more, is insufficient to withhold disclosure under law enforcement privilege. *See Floyd v. City of New York*, 739 F. Supp. 2d 376, 380 (S.D.N.Y. 2010); *Ketevski v. City of New York*, No. 04 Civ. 7402 RCC RLE, 2006 WL 680527, at *3 (S.D.N.Y. Mar. 16, 2006).  Additionally, Defendants fail to meet their burden to show that the so-ordered confidentiality agreement (which contains an attorneys' eyes only provision) would not suffice. *See Zhao v. City of New York*, No. 07 Civ. 3636 (LAK)(MHD), 2007 WL 4358470, at *4 (S.D.N.Y. Dec. 5, 2007).

### III.  QDAO E-mails (Document Request Nos. 4 & 15)

Plaintiff seeks e-mails from the inboxes of ADA Ross and ADA Ciesla (the initial assigned prosecutor), as well as the detective-investigator and paralegal who were involved in the case, concerning Plaintiff and his prosecution, the key witnesses, alternative suspects, and Ross's alleged *Brady* violations in this and an unrelated case. Plaintiff provided Defendants a list of search parameters on August 28, then provided a revised list with further narrowed parameters on September 25 (*see* Ex. D). Defendants object on the grounds of attorney work product privilege and that Plaintiff's request is too broad and burdensome. However, Defendants have provided no privilege log and have not shown that any search was even attempted. Plaintiff's counsel understands that the D.A.'s Office set up its e-mail system in 2001 and the requested emails should be available. To the extent that Defendants indicate that e-mails of a certain individual and/or for a certain timeframe are not available, a computer expert from the Queens

LAW OFFICES OF JOEL B. RUDIN, P.C.

Hon. Steven Tiscione
November 20, 2019
Page 4

DA's Office should be required to submit an affidavit to that effect, explaining on personal knowledge what efforts were made to recover the e-mails and the reasons they are allegedly unavailable.

### IV.   QDAO Privilege Log as to Other Materials (Document Request No. 4)

As an initial matter, Plaintiff notes that most of the privileges that Defendants assert in their privilege log are State privileges that are overcome by liberal federal discovery rules and the needs of plaintiffs in federal civil rights litigation aimed at exposing official abuse of power. *See generally King v. Conde*, 121 F.R.D. 180, 187-88 (E.D.N.Y. 1988) (Weinstein, D.J.).

#### a. Records Pertaining to Plaintiff's Criminal Cases (PRIV 11-12)

Defendants seek to withhold a 2005 search warrant and search warrant application (PRIV 11) concerning a prior case of Plaintiff's that has long been disposed of. Defendants may seek to question him about or to impeach him with this material or its contents. Defendants cite Judiciary Law §2-b(3), which merely contains broad language about the powers of New York's state courts "to devise and make new process and forms of proceedings," and has no bearing on federal discoverability.  Defendants also withhold Plaintiff's presentence report dated April 15, 2010 (PRIV 12) on the basis that it is sealed pursuant to N.Y. CPL § 390.50. However, CPL 390.50 is designed to protect the *defendant*, and itself mandates that the presentence report "shall be made available by the court for examination and for copying by the defendant's attorney" or "the defendant himself" prior to sentencing. N.Y. CPL § 390.50(2). It is bizarre for defense counsel to have access to this report but not Plaintiff.

#### b. Phone Records (PRIV 5, 10, 19)

Defendants seek to withhold old phone call logs in the D.A.'s records for three different phone numbers on the grounds of privacy. ADA Ross presumably obtained these records to show connections between individuals, possibly Plaintiff, but she never used them, suggesting they may be favorable to Plaintiff.  Defendants have failed to explain who the records pertain to or how they are privileged or protected from disclosure.

#### c. *People v. Coleman* Guilty Plea Transcript (PRIV 9)

Defendants withhold a transcript for the guilty plea of Plaintiff's codefendant from a prior gun possession case. Plaintiff alleges he pleaded guilty in this case, not because he was guilty, but solely because of his wrongful murder conviction and the promise of concurrent time; the plea was thus a further damage. His codefendant, Coleman, may have accepted responsibility for this gun during her plea, which would be exculpatory as to Plaintiff and support his claim. Or it may be impeachment evidence concerning Plaintiff, to which he is entitled to prepare his testimony.

LAW OFFICES OF JOEL B. RUDIN, P.C.

Hon. Steven Tiscione
November 20, 2019
Page 5

Defendants cite N.Y. Jud. Law §§ 300 and 302, and CPLR 8002, which concern payment of court stenographers. In this civil rights action brought by an indigent plaintiff, he (or his attorneys) should not have to pay a windfall to court stenographers, who already have been paid.

### d. Ross' 2016 *Ex Parte* Affirmation in Support of Protective Order (PRIV 3)

ADA Ross applied for (and was granted) a protective order, in connection with Plaintiff's retrial, delaying disclosure of certain information about Hilton and Turner. Defendants withhold ADA Ross' affirmation, alleging privacy and safety concerns, and because it is sealed pursuant to CPL 240.90(3). However, Defendants fail to identify how anyone's privacy or safety would be implicated by disclosure of this document, or why CPL 240.90(3), a state law privilege, should prevent disclosure here when the information contained within it has presumably already been disclosed. Hilton is deceased, Turner already testified in open court twice, and, when the protective order was lifted, Ross put on the record her purported grounds for seeking it. We believe the affirmation contains further impeachment material concerning Hilton and Turner that was never disclosed, or that Ross made false or unsubstantiated assertions to the court to delay disclosure and impede Plaintiff's preparation for trial. The affirmation thus bears upon Plaintiff's *Monell* claim as well as Ross' credibility.

### e. Records Concerning Criminal Cases of Hilton and Turner

While Plaintiff independently obtained some records of their arrests and convictions, the issue is whether Ross had such information, when she obtained it, and whether she suppressed it or delayed disclosure of it in violation of *Brady.*

#### i. Records Sealed under N.Y. CPL 160.50 (PRIV 17, 18, 22, 23, 24-A, 33, 68, 69)

Defendants have withheld "records concerning" Hilton's and Turner's criminal cases on the basis that they are sealed under N.Y. CPL 160.50. However, Defendants have indicated that they will not oppose Plaintiff's application to unseal all criminal cases of Hilton and Turner that occurred prior to Plaintiff's first trial in March 2010. Moreover, courts have rejected CPL § 160.50 privilege as a basis for blocking discovery in federal cases. *See Schomburg v. New York City Police Dep't*, 298 F.R.D. 138, 141 (S.D.N.Y. 2014) (citing cases). Plaintiff thus respectfully requests that this Court order unsealing, and disclosure, of the records pertaining to the cases contained within PRIV 17, 24-A, 33, 68, and 69.

We also seek records created after Plaintiff's first trial (i.e. contained within PRIV 17, 18, 22, 23, and 69) as evidence of Ross's ongoing violation of her *Brady/Giglio* obligations, which would support Plaintiff's *Monell* claim and relate to her credibility and that of Turner, a potential witness in this lawsuit.

LAW OFFICES OF JOEL B. RUDIN, P.C.

Hon. Steven Tiscione
November 20, 2019
Page 6

CPL 160.50 simply does not apply to *People v. Hilton*, Docket No. 2010QN047017 (PRIV 17), a misdemeanor conviction, and *People v. Jamal Grey*, Docket No. 2014QN011329 (PRIV 18), a DWI in which Turner used a false name, pled guilty, and received a jail sentence. As for PRIV 69, CPL 160.50 is clearly inapplicable to most of the documents, e.g., the 12/16 *unsealing* orders, and the transcript concerning Ind. No 2853-2009, which is an unsealed case that resulted in a felony conviction.

### ii. Records Withheld Under N.Y. Jud. Law 300, 302; N.Y. CPLR 8002 (PRIV 16, 30-32)

Defendants withhold what they describe as Hilton's probation records, and the court files and transcripts for cases of Hilton and Turner. Plaintiff seeks these records to ascertain what undisclosed impeachment information was in Ross' possession and, even if such records were not in her possession, whether they record her efforts to intervene on her witnesses' behalf. The records include:

*People v. Hilton*, Ind. No. 2557-08: This was a gun case in which Ross interceded on Hilton's behalf at numerous probation violation hearings, ultimately assisting him in obtaining an early termination of supervision despite his numerous violations.

*People v. Hilton*, No. 2009QN054650: Hilton was facing jail time for failing to complete court-ordered community service, but Ross appeared, spoke to probation, explained to the court she needed Hilton as a witness in Plaintiff's case, and the judge resentenced him to time served.

*People v. Hilton*, No. 2009 QN011936: This was a gun menacing case in which Hilton pled guilty to displaying a firearm to a store owner. Hilton denied at the first trial that he actually possessed a gun, claiming he was merely "speaking with his hands." Investigation by defense counsel on retrial revealed that the complainant alleged Hilton displayed a gun, and that Hilton's friend had threatened the complainant to drop the charges against Hilton.

*People v. Turner*, Ind. 1429-16: This was a weapon possession case that Turner pled guilty to and received a one-year jail sentence pursuant to his cooperation agreement with Ross to testify against Plaintiff at his retrial.

Again, Defendants cite laws concerning payment to court stenographers for transcripts the D.A. already paid for. Hilton is deceased and has no privacy interest in his probation records, certainly not one that outweighs Plaintiff's need for such records.

### iii. Records Withheld as Other Agency Records (PRIV 20)

Defendants withhold this document, titled "Records Concerning Seprel Turner Arrest dated August 11, 2013," as "other agency records." 5 U.S.C.A. 552(b)(5) provides an exemption for interagency "memoranda or letters" in response to FOIA requests, and N.Y. Pub. Off. Law §

Law Offices of Joel B. Rudin, P.C.

Hon. Steven Tiscione
November 20, 2019
Page 7

87(g) contains such an exemption for FOIL requests. However, neither provision applies here and, anyway, they are outweighed by Plaintiff's needs.

### iv. Records Withheld Under N.Y. Exec. Law 837(6); 9 NYCRR 6154(b)(6) (PRIV 21, 35, 55)

Defendants seek to prevent disclosure of Hilton's and Turner's RAP sheets and records concerning their criminal cases by citing to N.Y. Exec. Law 837(6) and 9 NYCRR 6154(b)(6), yet these provisions provide no basis for nondisclosure. 9 NYCRR 6154(b)(6) no longer exists, and Exec. Law 837(6) merely provides for the establishment of a centralized computer database to maintain RAP sheets linked to an individual's fingerprints.

### v. Records Withheld Under N.Y. CPL 390.50 (PRIV 63)

Defendants seek to withhold a Probation Violation Report for Turner based on CPL 390.50(1). However, it only confers confidentiality on pre-sentence reports and medical, psychiatric, or social agency reports submitted by the probation department "in connection with the question of sentence." CPL 390.50(1). It does not apply to *violation* reports.

## f. Records Concerning Plaintiff's Defense Witnesses or Alleged L-Gang Members

### i. Records Concerning William Brown and Dayvon Riley (PRIV 6, 14, 15)

Defendants withhold arrest records of William Brown (i.e. "B-Lover"), on the basis of privacy and CPL 160.50, as well as the results of a public records search on Dayvon Riley (i.e. "OX"), on the basis of privacy. The relevance of these records is obvious—ADA Ross alleged at the retrial that Plaintiff was associated with these men, that B-Lover was responsible for Turner's 2014 slashing and that OX threatened Turner and was responsible for Hilton's 2011 shooting. Plaintiff needs these records to determine whether Ross had any good faith basis for her smearing of Plaintiff with allegations he somehow was responsible for these assaults or acted in bad faith to prejudice Plaintiff's effort to obtain release on bail and a fair trial. Defendants fail to meet their burden of demonstrating that privacy interests justify nondisclosure of non-sealed arrests that presumably resulted in convictions (PRIV 14), or for nondisclosure of *public* records (PRIV 6). Nor does the state law privilege codified in CPL 160.50 provide a compelling basis for withholding Brown's sealed arrests given their relevance and Plaintiff's need for them.

### ii. Records Concerning Plaintiff's Alibi and Other Potential Defense Witnesses (PRIV 44-49)

PRIV 44-46 consist of Tyrell Garcia's criminal records (i.e. his mugshot, RAP Sheet, sealed arrest records, and unsealing orders) and Ross' notes. Garcia was one of Plaintiff's alibi

LAW OFFICES OF JOEL B. RUDIN, P.C.

Hon. Steven Tiscione
November 20, 2019
Page 8

witnesses and Ross alleged he was also a L-Gang member. PRIV 47-49 are "Records Gathered by ADA Ross in Preparation for Defense Case/Cross-Examination of Potential Defense Witnesses, Including RAP Sheets, Criminal Records and Handwritten Notes." Defense counsel has indicated PRIV 47-49 contain records on Plaintiff's alibi witnesses as well as other, unnamed witnesses. These records concern witnesses that are likely to testify in this litigation. It would be patently unfair for Defendants, but not Plaintiff, to have access to information concerning these witnesses, especially information bearing on their credibility.

Defendants withhold these records under N.Y. Exec. Law 837(6), 9 NYCRR 6154(b)(6), and the attorney work product privilege, and as to Tyrell Garcia specifically, under CPL 160.50 as well. Plaintiff will address the attorney work product privilege in the following section. As to CPL 160.50, N.Y. Exec. Law 837(6), and 9 NYCRR 6154(b)(6), they are state law privileges that should not govern discoverability here, and anyway, Exec. Law 837(6) and 9 NYCRR 6154(b)(6) provide no basis for nondisclosure—9 NYCRR 6154(b)(6) no longer exists, and Exec. Law 837(6) merely provides for the establishment of a centralized computer database to maintain RAP sheets linked to an individual's fingerprints. As for records concerning Tyrell Garcia sealed pursuant to CPL 160.50 (PRIV 44-46), Defendants have indicated they will not oppose an unsealing order for disclosure.

      g.  **Attorney Work Product Objections (PRIV 7, 13, 24, 39, 44, 45, 47-49, 51, 55, 62, 65, 67)**

Plaintiff seeks the following categories of documents withheld by Defendants as attorney work product: "Handwritten Notes by ADA Ross" (PRIV 7); notes by ADA Ross concerning Plaintiff's jail and prison phone calls (PRIV 13); "E-mail from Karen Ross to Self dated January 18, 2017 Concerning Trial of People v. Taylor, Ind. No. 475/2008" (PRIV 24); notes by ADA Ross concerning Hilton, Turner, and other witnesses (PRIV 39, 55, 65); notes and impeachment evidence collected by ADA Ross on Plaintiff's alibi and other potential defense witnesses (PRIV 44, 45, 47-49, 67); ADA Ciesla's memo on the grand jury presentment (PRIV 51); and QCDAO Status Sheets (PRIV 62).

Ross's notes are likely to contain factual information, including contemporaneous witness statements, bearing on credibility of testifying witnesses, as well as Plaintiff's alibi witnesses, who did not testify. They may also show the dates witnesses were spoken to or that they refused to cooperate. As such they are likely relevant in the present case where all such witnesses (except the deceased Hilton) are likely to testify. The notes may also show *Brady* material was withheld.

As for notes on Plaintiff's jail and prison phone calls, thousands of such calls were intercepted and were disclosed just before the second trial (the court precluded their use on People's direct case due to the late disclosure). Ross alleged that the calls she listened to linked Plaintiff to gang-related activity and to the alleged threats and attacks against Hilton and Turner.

L AW  O FFICES OF  J OEL  B. R UDIN , P.C.

Hon. Steven Tiscione
November 20, 2019
Page 9

Plaintiff is entitled to discover Ross' basis for making those allegations and whether she acted in bad faith. As for Ciesla's memo, he was present with Ross when Hilton, the sole eyewitness who testified in the grand jury, denied at the secret material witness proceeding that he saw the shooting and admitted being intoxicated; to the extent Ciesla's memo refers to Hilton's statements, or Hilton's and Turner's lack of voluntary cooperation, or contains other exculpatory information, it should be disclosed.

Defendants fail to meet their burden of establishing that the attorney work product privilege applies. The work product privilege, as codified in Fed. R. Civ. P. 26(b)(3), does not apply to materials prepared by nonparties, because the privilege was intended to preserve the "competitive balance between the litigants, a concern not directly implicated by discovery from a non-party." *See Ramsey v. NYP Holdings, Inc.*, No. 00 Civ. 3478(VM)(MHD), 2002 WL 1402055, at *6-7 (S.D.N.Y. June 27, 2002) (collecting cases). Ross and other prosecutors are nonparties. "[C]ourts…have consistently held that the privilege is unavailable when a prosecutor in a prior criminal investigation later objects to discovery of her work product by a litigant in a related civil lawsuit." *Abdell v. City of New York*, No. 05 Civ. 8453 (KMK)(JCF), 2006 WL 2664313, at *3 (S.D.N.Y. Sept. 14, 2005) (internal quotation marks and citation omitted); *see also Howell v. City of New York*, No. 06 Civ. 6347 (ERK)(VVP), 2007 WL 2815738, at *2 (E.D.N.Y. Sept. 25, 2007) (Pohorelsky, M.J.).

Neither does the broader doctrine articulated in *Hickman v. Taylor*, 329 U.S. 496 (1947), apply here. The privilege under *Hickman* only applies if disclosure would have a chilling effect on the attorney, would reward attorney sloth, or interfere with ongoing litigation. *See Abdell*, 2006 WL 264313, at *4 (citing *Hickman*). Disclosure here will not have an undue chilling effect on prosecutors in criminal cases: much of the discovery sought was or should have been disclosed as *Rosario* or *Brady/Giglio* material. *See id.* Disclosure will not interfere with any pending criminal case. *See id.* at *5. Plaintiff is not seeking to rely on the prosecutor's work as a substitute for his own diligence, but seeks these documents because they concern the knowledge and conduct of prosecutors of the QDAO and directly relate to his *Monell* claim.

Meanwhile, Defendants have failed to demonstrate that many of these documents are work product at all. For example, the objections under PRIV 7, 24, and 62 are too vague, and PRIV 45, 47-49, 55, and 65 contain criminal records such as RAP sheets and police reports that were not drafted or prepared by Ross and contain no mental impressions or litigation strategy. Even if the court finds these materials to be factual work product, the privilege is not absolute and must give way if Plaintiff demonstrates substantial need and undue hardship. *See* Fed. R. Civ. P. 26(b)(3). As to the records concerning Plaintiff and his defense witnesses specifically (PRIV 13, 44, 45, 47-49, and 67), Ross argued to the court at the retrial that Plaintiff and his alibi witnesses were all in the L-Gang, together with OX and B-Lover; these records are relevant to this claim and whether it was made in bad faith. PRIV 67 also clearly contains the contemporaneous statements of Plaintiff's alibi witnesses, who are likely to testify in this litigation. *See Crosby v. City of New York*, 269 F.R.D. 267, 279 (S.D.N.Y. 2010) (witness

LAW OFFICES OF JOEL B. RUDIN, P.C.

Hon. Steven Tiscione
November 20, 2019
Page 10

statements, even where those statements have been summarized by counsel, are factual work product subject to disclosure) (citing cases); *Riggs v. United States*, No. 11-cv-6964, 2016 WL 4486187, at *3 (S.D.N.Y. Aug. 24, 2016) (same).

Deposing these ADAs in lieu of these documents would not suffice where their conduct is directly at issue and the first trial happened almost ten years ago. *See Abdell*, 2006 WL 2664313, at *7 (S.D.N.Y. Sept. 14, 2006) ("substantial need for notes of prior statements because the passage of time and the present, potential bias of the defendants may color recollections") (internal quotation marks omitted). Ross, at her State Court of Claims deposition, denied any recollection of her interviews of Plaintiff's three alibi witnesses. Courts routinely order disclosure of factual work product from district attorney's offices where the work product is relevant to the plaintiff's civil rights claims, as is the case here. *See, e.g.*, *Schomburg v. New York City Police Dep't*, 298 F.R.D. 138, 143 (S.D.N.Y. 2014); *Conte v. Cty. of Nassau*, No. 06-cv-4746, 2009 WL 1362784, at *3 (E.D.N.Y. May 15, 2009) (Boyle, M.J).

Even if any of this material is opinion work product, it is also disclosable where the attorney's state of mind and conduct are at issue in the litigation. *See, e.g.*, *Anilao v. Spota*, No. CV 10-32 JFB AKT, 2015 WL 5793667, at *13 (E.D.N.Y. Sept. 30, 2015) (Tomlinson, M.J.) (directing disclosure of opinion work product of D.A.'s Office and collecting cases).

### h. Grand Jury Materials (PRIV 51, 52, 54)

Plaintiff seeks two sets of documents withheld under the grand jury secrecy privilege: grand jury notifications and subpoenas (PRIV 52, 54), and ADA Ciesla's memorandum concerning the grand jury presentment (PRIV 51), which defense counsel has indicated was prepared prior to the grand jury. Plaintiff seeks the grand jury notification subpoenas because they will establish the extent to which Hilton and Turner refused to cooperate with the DA's Office (in contrast to Ross' representations at trial that these witnesses were cooperative). And as discussed above, Plaintiff seeks ADA Ciesla's memorandum because it likely contains Hilton's statements, impeachment material, or other exculpatory information that was not disclosed to the defense.

Defendants cite to CPL 190.25(4) and Penal Law 215.70, which protect the secrecy of grand jury proceedings. However, it does not apply here, to material prepared prior to the grand jury. *See* CPL 190.25(4); Penal Law 215.70. Moreover, even if the court finds these records to be "grand jury materials," New York State law does not govern discoverability here, nor do any of the concerns underlying grand jury secrecy apply. *See Anilao v. Spota*, 918 F. Supp. 2d 157, 179-81 (E.D.N.Y. 2013) (Bianco, D.J.). Hilton, the sole inculpatory grand jury witness, is deceased and has no ongoing interest in secrecy, and his grand jury testimony already was disclosed as *Rosario* material at the first trial; the criminal case has long been disposed of; and disclosure would not reveal the identity of grand jurors or their deliberations.

LAW OFFICES OF JOEL B. RUDIN, P.C.

Hon. Steven Tiscione
November 20, 2019
Page 11

                                                      Respectfully submitted,

                                                             /s/

                                                      Haran Tae
                                                      *Counsel for Plaintiff*

cc:      Philip DePaul, Esq. (via ECF)
          Joshua Weiner, Esq. (via ECF)
          *Counsel for Defendants*