UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

RHIAN TAYLOR,

               Plaintiff,

  -against-

THE CITY OF NEW YORK and JOSEPH
BEY, Individually and as a Member of the
New York City Police Department,

            Defendants.

18-cv-5500 (KAM) (ST)

---

## PLAINTIFF'S MEMORANDUM OF LAW IN SUPPORT OF HIS MOTION TO AMEND THE COMPLAINT

---

LAW OFFICES OF JOEL B. RUDIN, P.C.
Joel B. Rudin
Matthew A. Wasserman
152 West 57th Street, 8th Floor
New York, New York 10019
(212) 752-7600
jbrudin@rudinlaw.com


*Attorneys for Plaintiff*

## TABLE OF CONTENTS

INTRODUCTION ............................................................................................. 1

PROCEDURAL HISTORY ............................................................................ 4

PROPOSED AMENDMENTS ........................................................................ 5

LEGAL STANDARD ...................................................................................... 6

ARGUMENT .................................................................................................... 7

    POINT I

    RHIAN TAYLOR HAS PLEADED A VIABLE CLAIM FOR EXCESSIVE
    PRETRIAL DETENTION ............................................................................ 7

        A.    Taylor has plausibly alleged a Fourth Amendment claim..................... 7

                1.    Law enforcement officials' suppression of exculpatory evidence
                        violated Taylor's right to be free of excessive pretrial detention. 8

                2.    Law enforcement officials' deliberate indifference to Taylor's
                        constitutional rights shocks the conscience. ............................... 15

                3.    The Second Circuit's decision in *Husbands* is not to the contrary.
                        .................................................................................... 16

        B.    Taylor has plausibly alleged an evidence-fabrication claim. ................ 17

    POINT II

    THERE IS NO VALID REASON TO DENY RHIAN TAYLOR LEAVE TO
    AMEND HIS COMPLAINT ...................................................................... 21

CONCLUSION ............................................................................................. 22

## <u>TABLE OF AUTHORITIES</u>

**Cases**

*Anderson News, L.L.C. v. Am. Media, Inc.*, 680 F.3d 162 (2d Cir. 2012)....................6

*Bellamy v. City of New York*, 914 F.3d 727 (2d Cir. 2019) .........................................20

*Brady v. Maryland*, 373 U.S. 83 (1963) ..................................................................1, 20

*Corbett v. Napolitano*, 897 F. Supp. 2d 96 (E.D.N.Y. 2012) .........................................6

*Doyle v. United Airlines, Inc.*, 914 F. Supp. 2d 325 (E.D.N.Y. 2012) .......................6, 7

*Dufort v. City of New York*, 874 F.3d 338 (2d Cir. 2017) ...........................................20

*Foman v. Davis*, 371 U.S. 178 (1962).......................................................................6, 21

*Gallegos v. Brandeis School*, 189 F.R.D. 256 (E.D.N.Y. 1999) ...................................7

*Garnett v. Undercover Officer C0039*, 838 F.3d 265 (2d Cir. 2016).....................18, 20

*Grenier v. Jonas*, 2010 WL 883743 (D. Vt. Mar. 5, 2010)..........................................14

*Husbands ex rel. Forde v. City of New York*, 2007 WL 2454106 (S.D.N.Y. Aug. 16, 2007) ...............................................................................................................16

*Husbands ex rel. Forde v. City of New York*, 335 F. App'x 124 (2d Cir. 2009) ..........16

*Isaac v. City of New York*, 2018 WL 5020173 (E.D.N.Y. Aug. 6, 2018), *report and recommendation adopted*, 2018 WL 4583481 (E.D.N.Y. Sept. 24, 2018) ....9, 10

*Isaac v. City of New York*, 2020 WL 1694300 (E.D.N.Y. Apr. 6, 2020) .......................9

*Kyles v. Whitley*, 514 U.S. 419 (1995) ..................................................................10, 13

*Lewis v. Connecticut Com'r of Correction*, 790 F.3d 109 (2d Cir. 2015)....................13

*Manuel v. City of Joliet, Ill.*, 137 S. Ct. 911 (2017) ......................................................7

*Morse v. Fusto*, 2013 WL 4647603 (E.D.N.Y. Aug. 29, 2013) ....................................19

*Morse v. Fusto*, 804 F.3d 538 (2d Cir. 2015).........................................................19, 20

*Newson v. City of New York*, 2019 WL 3997466 (E.D.N.Y. Aug. 23, 2019) ....... passim

*People v. Taylor*, 26 N.Y.3d 217 (2015).........................................................................1

*Ricciuti v. N.Y.C. Transit Auth.*, 124 F.3d 123 (2d Cir. 1997) .............................. 18, 19

*Russo v. City of Bridgeport*, 479 F.3d 196 (2d Cir. 2007) ................................ 3, 7, 9, 15

*Ying Li v. City of New York*, 246 F. Supp. 3d 578 (E.D.N.Y. 2017) ........................... 11

**Statutes**

N.Y. Crim. Proc. Law § 510.30 (McKinney 2010) ....................................................... 15

2019 Sess. Law News of N.Y. Ch. 59 (S. 1509-C) (McKinney's) ................................ 15

**Rules**

Fed. R. Civ. P. 15 ............................................................................................................. 6

## **INTRODUCTION**

On August 10, 2007, Darion Brown was fatally shot outside a house party in Queens. The Queens District Attorney's Office ("QDAO") prosecuted Rhian Taylor for this crime. After more than two years in pretrial detention, Taylor was convicted of murder based solely on the testimony of Seprel Turner and Anthony Hilton. The only other evidence was a cigarette butt containing his DNA found near the scene, which proved only that he was at the party.

Nearly six years after Plaintiff's conviction, on direct appeal, the New York Court of Appeals ordered a new trial because the trial court had erred in responding to a jury note, failing to provide the jury with all the trial evidence of the benefits the prosecution provided to Hilton and Turner in exchange for their testimony. *People v. Taylor*, 26 N.Y.3d 217, 219 (2015). Taylor was subsequently acquitted of all charges on retrial in January 2017, but not before spending one more year in pretrial detention. In all, he was incarcerated in this case for close to nine years.

Since the first trial, the case against Taylor has unraveled. Discovery in this case and parallel state-court litigation in the Court of Claims has demonstrated that Taylor's conviction was built on a foundation of *Brady* violations.[1]

The litany of such violations and instances of false testimony and argument is astounding. The prosecution never disclosed to Taylor's criminal defense counsel that Taylor did not match Hilton and Turner's initial description of the shooter, when their memories were most fresh: these witnesses described to the case

---

[1] *Brady v. Maryland*, 373 U.S. 83 (1963).

detective that the shooter was a clean-shaven man without glasses but Taylor had facial hair and wears corrective lenses. The prosecution, which painted a false picture of Hilton and Turner as cooperative witnesses motivated solely by a desire to bring their friend's killer to justice, suppressed that both men repeatedly refused to cooperate with the police and the D.A.'s Office, only agreeing to do so under the compulsion of material witness orders and in exchange for various forms of leniency, which for the most part also were not disclosed to the defense. The prosecution did not disclose that when Hilton initially refused to testify in the grand jury (before changing his mind after he was ordered to jail), Hilton told the judge at a material witness proceeding that he and his friends were drunk at the time of the shooting and he had only "heard" what happened. The prosecution did not disclose Hilton's involvement in two prior shootings, and did not correct his false testimony denying culpability when he was cross-examined about two of his prior convictions for weapons-related offenses. Knowing that there was evidence suggesting this shooting might have been gang-related, the prosecution did not disclose that Turner was a leader of the "Snow Gang"—a violent, drug-dealing organization active in the area where the shooting occurred.

This is only some of the wrongdoing that ultimately deprived Rhian Taylor of nearly nine years of his life. There is much more detailed in the proposed amended complaint ("PAC"). ADA Karen Ross, who still works for the QDAO and has since been promoted, flagrantly violated her constitutional duties to disclose *Brady* material and to correct false testimony. *Monell* discovery has shown that her

conduct was part of a pattern of such misconduct by QDAO prosecutors—herself and many others. The lead police investigator—Detective Joseph Bey—also failed to fulfill his constitutional obligations, and this failure is attributable under *Monell* to the NYPD's failure to adequately train, supervise, or discipline its officers about their *Brady* and related constitutional obligations.

In light of the discovery conducted in this case, Taylor now seeks to amend his complaint for the first time. Most of his proposed amendments are intended to conform the pleadings to the evidence, and we understand them to be unopposed. At issue is only whether Taylor can add a claim for excessive pretrial detention.

The Defendants oppose this amendment because, they claim, Taylor has failed to show "definitively exculpatory" evidence under *Russo v. City of Bridgeport*, 479 F.3d 196 (2d Cir. 2007). Defs.' Pre-Motion Conference Letter at 3, ECF No. 37. While we disagree that *Russo* fixed any such requirement, the facts in the proposed amended pleading, and the reasonable inferences from such facts, easily clear this bar. The prosecution team failed to disclose that the only two witnesses had provided a detailed description of the shooter that ruled out Taylor and that Hilton, the only alleged eyewitness in the grand jury, disqualified himself as a reliable witness by formally admitting at a material witness proceeding that he had not seen the shooting and that he and his friends, who included Seprel Turner, had all been intoxicated. The evidence the prosecutor and police suppressed destroyed the prosecution's case. The timely disclosure of this information likely would have led the grand jury not to indict, the prosecution to drop the charges, or the judge to set

a reasonable bail. Plaintiff likely would have avoided all his pretrial detention.

Besides pleading a valid *Russo* claim, Plaintiff's amended complaint for excessive pretrial detention also proceeds on a theory that his deprivation of liberty was caused by the constitutional evil of evidence fabrication. Detective Bey misled the D.A.'s Office and, ultimately, the grand jury, the court, and the defense, by providing reports implicating Plaintiff that falsely portrayed Plaintiff as guilty by omitting the witnesses' initial descriptions of the shooter, which were incompatible with Plaintiff's physical appearance. It is well established in the Second Circuit that plaintiffs can recover pretrial (and other consequential) damages caused by police whose omission of exculpatory information causes their reports to be materially misleading. Taylor's motion to amend the complaint should be granted.

## PROCEDURAL HISTORY

Taylor filed his complaint on October 1, 2018, and discovery has been proceeding on course. The current deadline for fact discovery is September 30, 2020, and the deadline for all discovery is February 1, 2021. Minute Order, ECF No. 40.

After conferring with the Defendants and failing to reach an agreement, the Plaintiff requested a pre-motion conference for his proposed motion to amend the complaint on March 19, 2020. The Defendants responded on March 26. The case was transferred from Judge Gershon to this Court on May 20, and this Court held a pre-motion conference on May 29. Following the pre-motion conference, the Plaintiff agreed to abandon one of the two proposed amendments to which the Defendants objected, *see* Letter to the Court, ECF No. 41, but the Defendants do not consent to the pretrial detention claim being included in the amended complaint.

4

## PROPOSED AMENDMENTS

The vast majority of Taylor's proposed changes to the complaint are intended to conform the pleadings to the evidence. Over the course of discovery, Plaintiff has discovered what he believes to be numerous further *Brady* violations underlying his conviction for murder (and continues to discover more) as well as further details establishing *Monell* liability. Plaintiff's understanding is that the Defendants do not oppose the additions and changes in the complaint by which Plaintiff seeks to conform the pleadings to the evidence. And, as noted above, in light of the pre-motion conference, Taylor has decided to withdraw his proposed claim that the City is liable under *Monell* because the D.A.'s *Brady* violation invalidates his guilty plea on a separate gun possession conviction. *See* ECF No. 41.

The only issue that remains in dispute, then, is whether the Plaintiff can amend his complaint to add a constitutional claim for excessive pre-trial detention before his first and second trials. It should be noted that in his original complaint, Taylor already alleged that the period of detention after the reversal of his conviction before his second trial was caused by his unlawful conviction.[2] Thus, with regard to the second period of pretrial detention he is only adding alternative legal theories supporting recovery. Because the *Brady* violations causing Plaintiff's wrongful pretrial detention also establish that his detention was caused by the

---

[2] The operative complaint alleges both that "ADA Ross contended that [Taylor's] conviction at the first trial demonstrated the likelihood that he would be convicted again and opposed his bail release" and that "[i]n all, Plaintiff spent six years and nine months in custody following his trial conviction." Compl. ¶¶ 94, 96, ECF No. 1. The period of six years and nine months was calculated by comparing the date of his conviction (March 29, 2010) to the date of his release on bail before the second trial (December 21, 2016). *See id.* ¶¶ 88, 95.

related but distinct constitutional tort of evidence fabrication, we seek to add such a claim as well. The two proposed new causes of action are labeled Two and Five.

A clean copy of Taylor's proposed amended complaint is attached as Exhibit A. A redline version showing all the changes from the currently operative complaint (with the exception of minor formatting changes) is attached as Exhibit B.

## LEGAL STANDARD

"The court should freely give leave [to amend the complaint] when justice so requires." Fed. R. Civ. P. 15(a)(2). Absent "any apparent or declared reason—such as undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of amendment, etc.—the leave sought should, as the rules require, be 'freely given.'" *Foman v. Davis*, 371 U.S. 178, 182 (1962). "The rationale underlying this rule is that 'if the underlying facts or circumstances relied upon by a plaintiff may be a proper subject of relief, the plaintiff ought to be afforded an opportunity to test his claim on the merits' through an amended pleading." *Corbett v. Napolitano*, 897 F. Supp. 2d 96, 119 (E.D.N.Y. 2012) (Matsumoto, J.) (cleaned up) (quoting *Foman*, 371 U.S. at 182).

Certainly, "[l]eave to amend may properly be denied if the amendment would be futile." *Anderson News, L.L.C. v. Am. Media, Inc.*, 680 F.3d 162, 185 (2d Cir. 2012) (citations omitted). But "[i]n determining whether the claim in a proposed amended complaint will be futile, 'the court must take the allegations of the complaint as true and draw all reasonable inferences in favor of the plaintiff.'" *Doyle v. United Airlines, Inc.*, 914 F. Supp. 2d 325, 333 (E.D.N.Y. 2012) (Matsumoto, J.)

(quoting *Gallegos v. Brandeis School*, 189 F.R.D. 256, 258 (E.D.N.Y. 1999) (Seybert, J.)). Accordingly, "even where the possibility of relief is remote, amendment must be permitted because it is the possibility of recovery, not its likelihood, that guides the court's analysis." *Id.* (quoting *Gallegos*, 189 F.R.D. at 259).

## ARGUMENT

## POINT I

### RHIAN TAYLOR HAS PLEADED A VIABLE CLAIM FOR EXCESSIVE PRETRIAL DETENTION

**A.     Taylor has plausibly alleged a Fourth Amendment claim.**

"[T]he Fourth Amendment governs a claim for unlawful pretrial detention even beyond the start of legal process." *Manuel v. City of Joliet, Ill.*, 137 S. Ct. 911, 920 (2017). In the Second Circuit, a plaintiff states a Fourth Amendment claim for excessive pretrial detention when he establishes "(1) that he has a right to be free from continued detention stemming from law enforcement officials' mishandling or suppression of exculpatory evidence, (2) that the actions of the officers violated that right, and (3) that the officers' conduct shocks the conscience." *Russo*, 479 F.3d at 205 (citation and internal quotation marks omitted). Thus, in *Russo*, the plaintiff stated a valid claim when (a) the police had possession of a videotape that (once enhanced) showed that the plaintiff did not rob a gas station because the robber did not have Russo's distinctive tattoos, and (b) the failure of the police to promptly review this video resulted in Russo's pretrial detention for 217 days. *Id.* at 206–08.

Judge Glasser recently elaborated on the *Russo* standard in *Newson v. City of New York*, a case involving the same prosecutor's office and prosecutor as this case.

16-cv-6773 (ILG) (JO), 2019 WL 3997466 (E.D.N.Y. Aug. 23, 2019). In *Newson*, the prosecution allegedly failed to disclose to the plaintiff—who was being held in pretrial detention on murder charges—ballistics evidence and a cellphone found at the scene, both of which indicated that another man might be the perpetrator. *Id.* at *3–4. Judge Glasser found that Newson met the first two elements of the *Russo* standard by plausibly "alleg[ing] that the QCDA violated *Brady* and withheld evidence which, if disclosed sooner, might have resulted in his earlier release." *Id.* at *6. As to *Russo*'s third element, Judge Glasser held that Newson "has adequately pleaded conduct that shocks the conscience, a standard easily satisfied at the motion to dismiss stage where all reasonable inferences must be drawn in favor of the plaintiff. An official's behavior shocks the conscience within the meaning of *Russo* when they act with deliberate indifference to an individual's constitutional rights." *Id.* (cleaned up). Judge Glasser also rejected any argument that *Russo* was distinguishable because it involved the police rather than prosecutors, stating that "there is no basis in law or logic to narrow *Russo*'s reasoning to police officers." *Id.*

As discussed below, the factual allegations of Rhian Taylor's proposed amended complaint easily meet the requirements of both *Russo* and *Newson*.

### 1. Law enforcement officials' suppression of exculpatory evidence violated Taylor's right to be free of excessive pretrial detention.

Taylor meets *Russo*'s first two elements by pleading that Detective Bey and the QDAO, to use Judge Glasser's language, "violated *Brady* and withheld evidence which, if disclosed sooner, might have resulted in his earlier release." *Id.*

Specifically, the complaint alleges that the police and prosecution suppressed

exculpatory information that, just like in *Russo* and *Newson*, indicated that the plaintiff was not the culprit: the prosecution's only two witnesses said in their first statement to the police, when their memory was at its freshest, that the shooter wore no facial hair and no glasses, while Taylor wears glasses and had facial hair when arrested shortly after the crime. PAC ¶¶ 126–32. This is similar to the evidence suppressed in *Russo*, where the surveillance video showed the robber did not have the plaintiff's tattoos. 479 F.3d at 206. It is even more exculpatory than the suppressed material in *Newson*, where ballistics evidence showed that the gun used in the murder Newson was accused of had been used by another man, Shamiek Corbett, in other shootings. 2019 WL 3997466 at *2. This did not rule out the defendants' guilt, since the gun could have been passed to one of them by Corbett, as opposed to this case, where Taylor could not have been the shooter based upon the suppressed eyewitness descriptions.

The failure to disclose that Taylor did not match the description of the shooter is also similar to the suppressed evidence held sufficient to state a *Russo* claim at the pleading stage in *Isaac v. City of New York*. No. 16-CV-4729, 2018 WL 5020173, at *10 (E.D.N.Y. Aug. 6, 2018) (Mann, M.J.), *report and recommendation adopted*, 2018 WL 4583481, at *5 (E.D.N.Y. Sept. 24, 2018) (Matsumoto, D.J.) (adopting "Judge Mann's well-reasoned and thorough R & R in its entirety").[3] In

---

[3] This Court later dismissed the *Russo* claim in *Isaac* on summary judgment. *See* 2020 WL 1694300 at *8 ("Plaintiff's statements are conclusory and unsupported by evidence."). But that the Plaintiff in *Isaac* could not prove his allegations does not undermine this Court's prior conclusion that the pleading stated a claim on which relief could be granted.

*Isaac*, the complaint alleged, among other things, that "Officer Assencao lied about the identification of plaintiff by Stefas and Kharbanda" and that "plaintiff did not match the description given by Stefas and Kharbanda of the person that they observed on the roof." 2018 WL 5020173 at *10. Here, by failing to disclose that Taylor did not match the initial description of the shooter, Detective Bey effectively lied about the conditions underpinning the identification of Plaintiff. Had he disclosed his knowledge, it is likely Plaintiff would not have been indicted or would have been granted pretrial release. Accordingly, Bey may be held liable under *Russo* for Plaintiff's pretrial detention, as we allege in proposed Cause of Action Two.

Cause of Action Five properly alleges that the City may be held liable under *Monell* because the policies, customs, or practices of the Queens District Attorney, for which New York City may be held liable, also were a substantial cause of Plaintiff's wrongful pretrial incarceration. The prosecution has a "duty to learn of any favorable evidence known to the others acting on the government's behalf in the case, including the police," *Kyles v. Whitley*, 514 U.S. 419, 437 (1995), so it is responsible as well for the suppression of the eyewitness descriptions. In addition, the prosecution suppressed that Hilton, the only witness to testify at the grand jury, told the judge at a material witness proceeding that he had only "heard" what happened and that he and his friends (presumably including Turner) were intoxicated at the time of this incident. PAC ¶¶ 215–18. This information is at least as powerful as the suppressed evidence that Judge Chen held stated a *Russo* claim in *Ying Li v. City of New York*, 246 F. Supp. 3d 578 (E.D.N.Y. 2017). In *Ying Li*, the

plaintiff was held in pretrial detention for four years while being prosecuted for the death of her infant daughter, who supposedly died of shaken baby syndrome (SBS). *Id.* at 623. "[T]he exculpatory evidence that Plaintiff allege[d] was concealed is the *absence* of any medical support for the charge that she caused Annie's death by SBS." *Id.* Here, drawing all reasonable inferences from Hilton's statement, he did not see the shooting and was intoxicated when it happened, which means that he could not offer any testimony reliably establishing Plaintiff's guilt. Since Hilton was the only witness to testify in the grand jury that Plaintiff was the shooter, the suppressed evidence essentially negated the only evidence supporting the indictment. Had it been timely disclosed, Plaintiff would not have been deprived of his liberty either because he would not have been indicted—and thus could not be detained pending trial—or the court would have granted his pretrial release.

Finally, the prosecution failed to disclose a mountain of additional evidence that would have further destroyed the prosecution's case and likely led a court to direct his pretrial release prior to the first trial. The evidence ADA Ross suppressed is too voluminous to fully describe here, but the highlights include the following:

- The prosecution's second identification witness, Turner, refused to cooperate with the prosecution, even after Bey had made 15 trips to his home to subpoena him for the grand jury, until he was arrested for gun possession and used his testimony as a bargaining chip to obtain leniency (thus avoiding a term of incarceration). PAC ¶¶ 185–97.

- Turner headed up a violent organization known as the "Snow Gang."

11

PAC ¶¶ 198–203.

- At the time he first identified Taylor as the shooter, Hilton was being prosecuted by the Queens D.A.'s Office for possession of a stolen automobile. PAC ¶ 206.

- Hilton subsequently refused to cooperate with the police and prosecution, even rejecting a subpoena served on him personally by Detective Bey. PAC ¶¶ 208–10.

- Ross obtained a material witness application for Hilton, Bey arrested him, and yet Hilton still refused to testify when asked at the material witness proceeding, only agreeing to testify in the grand jury after he was jailed. PAC ¶¶ 211–221.

- When Hilton testified in front of the grand jury, he was in the custody of the D.A.'s Office. PAC ¶ 222.

- After Hilton testified in the grand jury, the Queens D.A.'s Office dropped his pending grand larceny charge and did not pursue any prosecution for bail jumping. PAC ¶ 227.

Additional impeachment evidence emerged shortly before, during, and after the first trial which Ross suppressed through all or most of the one-year period Plaintiff was detained prior to his second trial. It included:

- Records of the D.A.'s Office which showed that Hilton had testified falsely at the first trial in denying his culpability in his gun-possession and menacing-with-a-gun cases. PAC ¶¶ 228–35, 240–42.

12

- ADA Ross had to obtain a material witness warrant for Hilton's testimony a week before Taylor's first trial, while falsely portraying him as cooperative. PAC ¶¶ 245–49.

- ADA Ross intervened to help Hilton avoid a probation violation for the felony gun case, while falsely denying having done so. PAC ¶¶ 250–55.

- ADA Ross did not disclose that she helped Hilton avoid incarceration for probation violations on multiple other occasions. PAC ¶¶ 257–65.

- ADA Ross learned of a plethora of evidence known to her Office as well as the NYPD further implicating Seprel Turner in the criminal activities of the Snow Gang and in beatings of other prisoners at Rikers Island in 2016. *See* PAC ¶ 353–370.

This additional evidence falls into the category of impeachment, but *Brady* caselaw has consistently declined to draw a distinction between the two. The Supreme Court has explicitly "disavowed any difference between exculpatory and impeachment evidence for *Brady* purposes." *Kyles*, 514 U.S. at 433. And the Second Circuit has made clear that "[t]he State's failure to disclose exculpatory evidence, *including impeachment evidence*, in its possession constitutes a *Brady* violation." *Lewis v. Connecticut Com'r of Correction*, 790 F.3d 109, 122 (2d Cir. 2015) (emphasis added). While *Russo* claims are brought under the Fourth Amendment, not the Due Process Clause, they similarly deal with law enforcement's failure to disclose exculpatory evidence and draw on the principles from *Brady* cases. *See Newson*, 2019 WL 3997466, at *5 ("[I]t is clear that the constitutional violation that

13

occurred in *Russo* . . . was akin to breach of [the defendants'] *Brady* obligations."). There is thus no reason to reject a *Russo* claim for excessive pretrial detention based on the failure to disclose exculpatory evidence just because some of the evidence upon which the Plaintiff relies is impeachment evidence. *See Grenier v. Jonas*, No. 1:09-CV-121, 2010 WL 883743, at *5 (D. Vt. Mar. 5, 2010) (holding that plaintiff stated viable *Russo* claim when he alleged that the defendant police officer allegedly suppressed a voicemail from the complainant with "strong impeachment value"). Evidence that the only witness or witnesses who inculpate the defendant are unbelievable and their testimony is essentially worthless is just as relevant to pretrial release as is evidence of innocence. In either case, a factfinder must decide who and what to believe and what weight to give to conflicting evidence.

Had all the evidence discussed above been disclosed to the defense before trial, ADA Ross would have likely been forced to reassess her case and drop the charges, resulting in Taylor's release from pretrial detention (just like in *Russo*). Her case already was questionable, since she had interviewed three defense witnesses who fully exculpated Plaintiff and she knew her only two inculpatory witnesses were recalcitrant. *See* PAC ¶¶ 185–97, 208–14, 219–26. Even if the prosecution continued, the defense would have been able to use the information to secure Taylor's release on a reasonable bail (which his family had the means to afford). At the time that Taylor was being held in pretrial detention, a crucial factor determining whether bail would be granted was "the weight of the evidence against him in the pending criminal action and any other factor indicating probability or

14

improbability of conviction." N.Y. Crim. Proc. Law § 510.30 (McKinney 2010).[4] Had Taylor's counsel had known of the copious exculpatory and impeachment material detailed above, he would have been able to powerfully argue to the court that Taylor's conviction was highly improbable and Taylor should be released on reasonable bail or on his own recognizance. Thus, just like in *Newson*, the disclosure of this suppressed material "might have resulted in his earlier release." *Newson*, 2019 WL 3997466 at *6. Due to the additional impeachment evidence in the prosecution's possession prior to the second trial, Plaintiff's arguments for dismissal or release would have been even stronger at that time than before the first trial.

### 2. Law enforcement officials' deliberate indifference to Taylor's constitutional rights shocks the conscience.

The factual allegations in the complaint also meet *Russo*'s third element. To show that the suppression of exculpatory evidence shocks the conscience, Taylor must show "either intentional violation of, or deliberate indifference to, [his] constitutional rights." *Russo*, 479 F.3d at 210. Here, Taylor has pleaded ample evidence that Detective Bey, ADA Ross, and policymaking officials of the QDAO and NYPD acted with at least deliberate indifference. Indeed, the Defendants have already implicitly admitted as much, declining to file a motion to dismiss Taylor's *Monell* claims when deliberate indifference is an element of these claims. Because the exculpatory or impeachment value of the evidence discussed above is "self-evident," Taylor "is entitled to the inference, for purposes of this motion to [amend],

---

[4] Since the 2019 reform of the bail laws, the weight of the evidence against the defendant is no longer a factor to be considered in setting bail. *See* 2019 Sess. Law News of N.Y. Ch. 59 (S. 1509-C) (McKinney's). But it was a statutory factor at all times relevant to this case.

that the . . . failure to disclose this evidence amounted to reckless indifference . . . , rather than mere negligence or inadvertence." *Newson*, 2019 WL 3997466, at *6.

### 3. The Second Circuit's decision in *Husbands* is not to the contrary.

The Defendants argued in their pre-motion letter that the proposed amended complaint does not state a plausible claim to relief under *Russo* because the suppressed information was not "definitively exculpatory." ECF No. 37 at 3. They derive this supposed requirement from dictum in an unpublished summary order, *Husbands ex rel. Forde v. City of New York*, 335 F. App'x 124 (2d Cir. 2009). In that case, the summary order does not describe the evidence that failed to state a *Russo* claim, but the district court's opinion indicates that the plaintiff was complaining that the police did not investigate an alternate suspect when they apparently did so. *See Husbands*, No. 05-CIV-9252 (NRB), 2007 WL 2454106, at *12 (S.D.N.Y. Aug. 16, 2007). This evidence was so far wide of the mark that there was no need for the Court of Appeals to decide where to draw any line about the quality of "exculpatory" evidence necessary to state a *Russo* claim. The court's casual observation that, "[i]n contrast with *Russo,* there was no definitive evidence in the authorities' possession that could have proven that Forde was not the shooter," *Husbands*, 335 F. App'x at 129, surely was not a considered effort to refine or narrow *Russo*'s requirement that the evidence be "exculpatory." Neither *Russo* nor any other binding precedent requires "definitively exculpatory" evidence. While district court decisions on this issue are mixed, we believe that Judge Glasser stated the view most faithful to the Fourth Amendment: that the plaintiff must show that law enforcement officials

16

"withheld evidence which, if disclosed sooner, *might* have resulted in his earlier release." *Newson*, 2019 WL 3997466, at *6 (emphasis added).

This issue is somewhat academic, however, because the evidence discussed above is "definitively exculpatory." The prosecution's entire case boiled down to Hilton and Turner's testimony. Drawing all reasonable inferences in the plaintiff's favor, the suppressed evidence entirely undermined their testimony and credibility. It included evidence that both men initially gave a description of the shooter that *excludes* Taylor, that Hilton said he *did not see the shooting* and he and Turner were intoxicated, that Hilton testified in the grand jury only because he was taken prisoner by the D.A.'s Office and was in their custody, and that both men, despite claiming a motive to bring to justice their friend's killer, were reluctant witnesses who testified only when they were in custody and bargaining for their liberty.

## B.    Taylor has plausibly alleged an evidence-fabrication claim.

In the proposed amended complaint, Taylor pleads a viable evidence fabrication claim which also would entitle him to recover damages for pretrial detention (and other consequential damages). To state a claim for evidence fabrication, a plaintiff must allege that "an (1) investigating official (2) fabricate[d] information (3) that is likely to influence a jury's verdict, (4) forwards that information to prosecutors, and (5) the plaintiff suffers a deprivation of life, liberty, or property as a result." *Garnett v. Undercover Officer C0039*, 838 F.3d 265, 279 (2d Cir. 2016). It is beyond cavil in this Circuit that such a claim allows a plaintiff to recover for pretrial deprivations of liberty. *See id.* at 268 (plaintiff acquitted at trial after spending nearly eight months in pretrial incarceration); *Ricciuti v. N.Y.C.*

17

*Transit Auth.*, 124 F.3d 123, 127, 130 (2d Cir. 1997) (case dismissed before trial).

Here, Taylor plausibly alleges each of *Garnett*'s elements. (1) Detective Bey (2) "prepared police reports that he knew, or should have known, were false or misleading . . . because they omitted information, known to Bey, tending to show that Plaintiff was innocent and/or that his accusers were unworthy of belief." PAC ¶ 148. Specifically, Bey deliberately omitted that "Turner and Hilton had provided a detailed description of the shooter that ruled out Plaintiff as the guilty party." PAC ¶ 149. Bey also deliberately "omitted from his reports that, rather than having independently accused and identified Plaintiff as the shooter, Turner and Hilton had discussed with each other what had occurred and Turner, after falsely denying he knew where to find Hilton, had then brought Hilton to Bey to be interviewed." PAC ¶ 150. (3) "Bey knew that the documentation he handed to prosecutors was likely to convince reasonable jurors to convict Plaintiff of the murder." PAC ¶ 152. (4) Bey forwarded "his documentation of his investigation to prosecutors." PAC ¶ 151. And (5) "Bey's preparation of false or misleading reports and other documentation . . . was highly significant to the prosecutor's decision whether to prosecute, the grand jury's decision whether to indict, and to the court's decisions, prior to each trial, whether to grant Taylor pretrial release on a reasonable bail." PAC ¶ 156. Thus, Bey's misconduct caused Plaintiff's pretrial detention.

The omission of information that is favorable to the defendant from police reports supports a claim of evidence fabrication where the omission causes the report to be materially misleading or false. As Judge Amon has explained: "The

knowing use, by police or prosecutors, of evidence that has been altered to be materially misleading is just as harmful to the 'truth-seeking function of the trial process' . . . as the knowing use of evidence that has been completely made up." *Morse v. Fusto*, No. 07-CV-4793 CBA RML, 2013 WL 4647603, at *8 (E.D.N.Y. Aug. 29, 2013) (quoting *Ricciuti*, 124 F.3d at 130), *aff'd*, 804 F.3d 538 (2d Cir. 2015). There is "no reasoned principle on which to make a distinction. For example, a police report that accurately sets forth an account of an arrest may be made false by the omission of certain critical details. . . ." *Id.* Indeed, as Judge Amon noted, there are numerous "other areas of law that make no legal distinction between misleading statements or omissions and affirmative falsehoods." *Id.* (collecting authority).

The Second Circuit affirmed this decision, holding that "government officials may be held liable for fabricating evidence through . . . omissions that are both material and made knowingly." 804 F.3d at 547. That is because "[i]nformation may be 'false' if material omissions render an otherwise true statement false." *Id.* at 548. The Circuit thus rejected the defendants' arguments "that deliberate omissions of material facts are qualitatively different from affirmative misstatements, or that omissions alone cannot support a successful section 1983 action for using fabricated evidence to deprive a plaintiff of his constitutional rights." *Id.* Both omissions and affirmative misrepresentations, it reasoned, "threaten the integrity of the judicial process by injecting it with falsity provided by officers of the state whose official status gives the misinformation a special aura of reliability." *Id.* at 548–49.

Although the original complaint in this case focused on Bey's actions as the

basis for a *Brady* claim relating to the trial, claims for evidence fabrication are often closely "related" to *Brady* claims. *Bellamy v. City of New York*, 914 F.3d 727, 755 (2d Cir. 2019). In *Bellamy*, for example, the Second Circuit reversed the entry of summary judgment for the defendants on both evidence fabrication and *Brady* claims relating to a DD5 report that, like in this case, was prepared by the investigating detective. Bellamy contended both that the detective falsely attributed statements to a witness in a DD5 report (identifying Bellamy as the perpetrator), *id.* at 747–48, and also that the DD5 report failed to memorialize the exculpatory statements that the witness did in fact make (telling the detectives that the individual she saw was not Bellamy), *id.* at 755. The *Brady* and evidence fabrication claims in *Bellamy* were thus two sides of the same coin. As the Second Circuit has stated, both evidence-fabrication claims and *Brady* claims rest on the due process "right to have one's case tried based on an accurate evidentiary record that has not been manipulated by the prosecution [or the police]." *Dufort v. City of New York*, 874 F.3d 338, 355 (2d Cir. 2017) (citing both *Brady* and *Garnett*).

Accordingly, the proposed amended complaint states a viable claim for evidence fabrication against Bey, and Taylor can recover for his pretrial detention due to Bey's misconduct as well as for all resulting consequential damages.

## POINT II

## THERE IS NO VALID REASON TO DENY RHIAN TAYLOR LEAVE TO AMEND HIS COMPLAINT

For the reasons discussed above, the proposed amended complaint is not futile. And there is no other reason to deny Plaintiff's motion to amend.

Taylor's amended complaint would not cause undue delay or undue prejudice, nor is it dilatory or in bad faith, nor has he repeatedly failed to cure deficiencies in his pleading. Cf. *Foman*, 371 U.S. at 182. This is Taylor's first proposed amendment to the complaint. It comes significantly before the close of fact discovery—currently scheduled for the end of September but likely to be further delayed because of the COVID-19 pandemic—and would not significantly expand the scope of discovery. While permitting the Plaintiff to add a constitutional claim for deprivation of liberty before the first and second trials would provide an alternative basis for relief and increase his potential recovery, the factual basis for this claim is essentially identical to the factual basis for the existing *Brady* claim. Indeed, allowing the amendment would likely simplify the discovery process because the Defendants have indicated that they will withdraw their relevancy objections to certain of Taylor's discovery requests if the motion to amend is granted. (Plaintiff believes that the requested information is relevant to the currently operative complaint, but in the interest of efficiency has agreed not to file a motion to compel before the magistrate judge until the present motion is decided.)

## **CONCLUSION**

Plaintiff's motion to amend the complaint should be granted in its entirety.

Respectfully submitted,

/s/
LAW OFFICES OF JOEL B. RUDIN, P.C.
Joel B. Rudin
Matthew A. Wasserman
152 West 57th Street, 8th Floor
New York, New York 10019
(212) 752-7600
jbrudin@rudinlaw.com

*Attorneys for Plaintiff*

DATED:    New York, New York
          June 19, 2020