UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
---------------------------------X
RHIAN TAYLOR,

       *Plaintiff*,                 **MEMORANDUM & ORDER**

       -against-           18-cv-5500 (KAM)(ST)

THE CITY OF NEW YORK and JOSEPH
BEY, Individually and as a Member
of the New York City Police
Department,

       *Defendants*.
---------------------------------X

**KIYO A. MATSUMOTO, United States District Judge:**

      On October 1, 2018, plaintiff Rhian Taylor
("plaintiff" or "Mr. Taylor") commenced this action against New
York Police Department Detective Joseph Bey ("Detective Bey")
and the City of New York alleging a violation of his Fifth,
Sixth, and Fourteenth Amendment rights pursuant to 42 U.S.C. § §
1983, 1988. (*See* Compl. ("Compl."), ECF No. 1 ¶¶ 1-4.)
Presently before the court is plaintiff's motion to amend his
complaint to add claims for excessive pre-trial detention before
his first trial in violation of the Fourth Amendment, and
evidence fabrication. (Mot. to Am. Compl. ("Pl. Mot."), ECF No.
43; Mem. in Sup. ("Pl. Mem."), ECF No. 43-2; Proposed Am. Compl.
("PAC"), Exhibit A, ECF No. 43-3.)  For the reasons set forth
below, the court grants plaintiff's motion to file a first
amended complaint.

## BACKGROUND

The following facts are drawn from plaintiff's proposed first amended complaint. (*See generally* PAC.)  On August 10, 2007, Darion Brown was fatally shot in his vehicle, while parked outside of a house party in Queens, New York. (PAC ¶ 17.)  Detective Bey, a Queens homicide detective, was assigned to the case. (*Id.* ¶ 22.)  An investigation unearthed witnesses Seprel Turner ("Mr. Turner") and Anthony Hilton ("Mr. Hilton"), both of whom were friends of the victim and eventually identified plaintiff as the shooter and murder suspect. (*Id.* ¶¶ 23-26.)  However, Detective Bey had knowledge that the witnesses were not credible. (PAC ¶ 153.)  Specifically, among other alleged pieces of evidence, plaintiff alleges that Detective Bey knew and did not disclose that: Messrs. Turner and Hilton initially described a heavyset black male who was clean-shaven and did not wear eyeglasses as the shooter, *id.* ¶¶ 126-32; Mr. Turner was a leader of the neighborhood "Snow Gang", *id.* ¶¶ 198-200; that Messrs. Hilton and Turner were intoxicated at the time they witnessed the shooting, *id.* ¶ 204; that Mr. Hilton was being prosecuted by the Queens County District Attorney's Office ("QCDA") for possession of a stolen automobile at the time Detective Bey interviewed him, *id.* ¶ 206; and that Mr. Hilton refused to cooperate with police until he was eventually

threatened with being sent to Rikers Island during a material witness proceeding unless he cooperated. (*Id.* ¶¶ 206—229.)

The Queens County District Attorney's Office, represented by Assistant District Attorney Karen Ross ("ADA Ross"), conducted Mr. Taylor's prosecution. (Pl. Mem. 5.) On April 18, 2008, Mr. Taylor was indicted by a grand jury for second degree murder and possession of the murder weapon. (PAC ¶¶ 28-29.) Mr. Taylor's jury trial commenced on March 11, 2010 in the Supreme Court, Queens County. (*Id.*) On March 29, 2010, Mr. Taylor was convicted of the charges against him based on the testimony of Messrs. Turner and Hilton, and on DNA evidence of the plaintiff found on a cigarette butt recovered from the crime scene. (*Id.* ¶¶ 32, 33, 106.)

On October 27, 2015, the New York State Court of Appeals reversed Mr. Taylor's murder conviction and his sentence due to a violation of his right to a fair trial. (*Id.* ¶ 108.) The Court of Appeals reasoned that the lower court judge had provided a misleading response to the jury's inquiry about what benefits Messrs. Turner and Hilton received for testifying against Mr. Taylor. (*Id.* ¶¶ 109-10.) The Court of Appeals found that the lower court judge wrongfully withheld from the jury Mr. Hilton's testimony about ADA Ross' appearance on his behalf at a probation violation proceeding, because it undercut defense counsel's argument that Mr. Hilton had a motive to lie.

(*Id.*)  Mr. Taylor was remanded to Rikers Island in lieu of being released on bail pending retrial.  (*Id.* ¶¶ 111-12.)  ADA Ross opposed Mr. Taylor's bail release.  (*Id.*)  In or around December 2016, Mr. Taylor moved for his bail to be reduced against ADA Ross' opposition.  (*Id.* ¶¶ 113-14.)  The trial court judge fixed a bail condition under which Mr. Taylor would be released upon his deposit of $75,000 cash bail.  (*Id.* ¶¶ 117-18.)  Mr. Taylor was released on bail to await retrial on or around December 21, 2016.  (*Id.*)

Mr. Hilton was murdered before Mr. Taylor's second trial.  (*Id.* ¶¶ 119-20.)  As a result, at Mr. Taylor's second trial, only Mr. Turner testified that Mr. Taylor was the individual who shot and murdered Darion Brown.  (*Id.*)  Mr. Hilton's previous trial testimony was read into the record.  (*Id.*)  On January 31, 2017, Mr. Taylor was acquitted of the murder of Darion Brown.  (*Id.* ¶ 121.)  Plaintiff spent more than two years in custody on the murder charge before his first trial, five years and nine months in prison on his conviction, and approximately one year in jail awaiting his second trial.  (*Id.* ¶ 122.)  In total, plaintiff spent eight years and nine months in jail or prison.  (*Id.* ¶ 123.)

## I.   Procedural History

On October 1, 2018, Mr. Taylor filed the original complaint asserting violations of his constitutional rights

4

pursuant to 42 U.S.C. § § 1983, 1988.  (*See generally* Compl.)
On February 21, 2019, defendants filed their answer.  (Answer to
Compl., ECF No. 14.)  In his original complaint, Mr. Taylor
alleged three causes of action.  In his First Cause of Action,
Mr. Taylor alleged that Detective Bey violated his right to due
process and a fair trial under the Fifth, Sixth, and Fourteenth
Amendments, and 42 U.S.C. § 1983 when Detective Bey failed to
disclose "all information that tended to show [plaintiff's]
innocence and/or impeached the credibility of the prosecution's
witnesses against him."  (Compl. ¶ 98.)  In his Second Cause of
Action, Mr. Taylor alleged that, in violation of 42 U.S.C. §
1983, defendant the City of New York through the NYPD
"implemented plainly inadequate policies, procedures,
regulations, practices, customs, training, supervision, and
discipline concerning the continuing duty of police
investigators to preserve and to make timely disclosure to the
District Attorney, during criminal investigations and
prosecutions, of all material evidence or information ('*Brady*
material') favorable to a person suspected, accused or convicted
of criminal conduct, including, but not limited to, evidence of
innocence as well as evidence affecting the credibility of
prosecution witnesses, so that the District Attorney could
comply with his constitutional obligation to disclose such
information to the defense under *Brady*."  (Compl. ¶ 112.)

Finally, in his Third Cause of Action, Mr. Taylor alleged that, in violation of 42 U.S.C. § 1983, defendant the City of New York through the QCDA had a "policy, custom and/or practice of approval or ratification of, toleration or acquiescence in, or deliberate indifference to, violations of [the QCDA's] constitutional obligations foreseeably encouraged [*Brady*] violations to continue and was a substantial cause of ADA Ross's violations of Plaintiff's constitutional rights before and during his trial, his wrongful conviction, and the continuation thereafter of [Plaintiff's] wrongful imprisonment and prosecution."  (Compl. ¶ 174.)

On March 19, 2020, Mr. Taylor filed a letter seeking a pre-motion conference regarding a proposed motion to amend his complaint, *see* ECF No. 36, and defendants filed a response in opposition to plaintiff's proposed motion to amend on March 26, 2020.  (*See* ECF No. 37.)  In his proposed amended complaint, plaintiff retains his First Cause of Action, *see* PAC ¶ 124, shifts the original Second Cause of Action to become the proposed amended Third Cause of Action, *see id*. ¶ 160, and shifts the original Third Cause of Action to become the amended Fourth Cause of Action.  (*Id.* ¶ 176.)  Plaintiff adds to his proposed amended complaint a new Second and Fifth Cause of Action.  (*See id.* ¶¶143, 334.)  Plaintiff's proposed Second Cause of Action alleges that Detective Bey fabricated and

suppressed exculpatory and impeachment evidence, thereby denying plaintiff of liberty, due process, and a fair trial in violation of the Fourth, Fifth, Sixth, Eighth and Fourteenth Amendments and 42 U.S.C. § 1983. (*Id*. ¶ 143.) Plaintiff's proposed Fifth Cause of Action alleges that defendant the City of New York through the QCDA violated plaintiff's rights to pretrial disclosure of exculpatory information and to not be deprived of liberty based on misleading evidence in violation of the Fourth, Fifth, Sixth, Eighth and Fourteenth Amendment and 42 U.S.C. § 1983. (*Id*. ¶ 334.)

On May 20, 2020, Chief Judge Roslynn Mauskopf reassigned the case to this court for further proceedings. (Dkt. Order dated May 20, 2020.) On May 26, 2020, Magistrate Judge Tiscione granted the joint motion for extension of time to complete discovery, *see* ECF No. 38, and provided the following deadlines: fact discovery on September 30, 2020; plaintiff's expert reports on November 16, 2020; defendants' expert reports on December 31, 2020; expert depositions on February 1, 2021; all discovery completed by February 1, 2021; and the first step in dispositive motion practice to take place on March 1, 2021. (Civil Minute Entry dated May 26, 2020, ECF No. 40.)

On May 29, 2020, this court held a pre-motion conference. (Civil Minute Entry dated May 29, 2020.) On June 2, 2020, Mr. Taylor submitted a letter regarding his proposed

motion to amend and stated that the plaintiff would not include a new claim relating to the validity of his plea to criminal possession of a weapon, and that the parties were unable to reach an agreement regarding Mr. Taylor's proposed new cause of action for unlawful pretrial detention.  (Pl.'s Ltr Dated June 2, 2020, ECF No. 41.)  On July 24, 2020, Mr. Taylor submitted his motion to amend, *see* ECF No. 43, his memorandum in support, *see* Pl. Mot. *and* Pl. Mem, and his original reply in support. (*See* Pl. Reply in Support, ECF No. 47.)  On the same day, defendants submitted their memorandum in opposition asserting that Mr. Taylor's additional claims of excessive pre-trial detention and fabrication of evidence are futile.  (Defs.' Mem. of Law. in Opp. to Pl.'s Mot. to Amend the Compl. ("Def. Opp."), ECF No. 44 at 5-14.)  Defendants have also submitted an affidavit in opposition with several exhibits attached to their opposition.  (Decl. of Philip R. DePaul in Opp. to Pl.'s Mot. to Amend the Compl. ("DePaul Decl."), ECF No. 45.)

On August 3, 2020, Mr. Taylor's counsel filed a corrected reply memorandum of law (Corrected Reply in Support ("Pl. Reply"), ECF No. 50-1) and provided a letter explaining that the corrected version only updated the blank ECF docket numbers on pages one and six of plaintiff's original filing. (Pl.'s Ltr filed Aug. 3, 2020, ECF No. 50.)

## **LEGAL STANDARD**

A party may amend its pleading once as a matter of course within twenty-one days after serving it or, if the pleading requires a responsive pleading, twenty-one days after service of a motion under Rule 12(b), (e), or (f).  Fed. R. Civ. P. 15(a)(1).  When a party is not entitled to amend its complaint as a matter of course, a "a party may amend its pleading only with the opposing party's written consent or the court's leave."  *Id.* (a)(2).  "The court should freely give leave when justice so requires."  *Id.*  "In the absence of any apparent or declared reason – such as undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of amendment, etc. – the leave should, as the rules require be 'freely given.'"  *Foman v. Davis*, 371 U.S. 178, 182 (1962); *see also Assam v. Deer Park Spring Water*, 163 F.R.D. 400, 404 (E.D.N.Y. 1995) (Motions to amend complaints should be "liberally granted absent a good reason to the contrary.").

To survive a challenge of futility, the proposed amended complaint must "contain enough allegations of fact to state a claim for relief that is 'plausible on its face.'" *Mendez v. U.S. Nonwovens Corp.*, 2 F. Supp. 3d 442, 451 (E.D.N.Y.

2014) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  "An amendment is futile if it cannot survive a Rule 12(b)(6) motion to dismiss."  *Porter v. MooreGroup Corp.*, 2020 WL 32434, at *5 (E.D.N.Y. Jan. 2, 2020) (citing *Lucente v. IBM Corp.*, 310 F.3d 243, 258 (2d Cir. 2002)); *see also Panther Partners Inc. v. Ikanos Commc'ns, Inc.*, 681 F.3d 114, 119 (2d Cir. 2012) ("Futility is a determination, as a matter of law, that proposed amendments would fail to cure prior deficiencies or to state a claim under Rule 12(b)(6) of the Federal Rules of Civil Procedure.").  In its assessment of futility, the court is "required to accept the material facts alleged in the amended complaint as true and draw reasonable inferences in the plaintiffs' favor."  *Lucente*, 310 F.3d at 258 (citing *Ashcroft v. Iqbal*, 566 U.S. 662, 678-79 (2009)).

Therefore, to state a claim under Section 1983, a plaintiff "must plead facts that plausibly demonstrate he was denied a constitutional or federal statutory right, and that the deprivation of that right occurred at the hands of an individual acting under color of state law . . . ."  *Gonzalez v. New York City*, 2016 WL 7188147, at *2 (S.D.N.Y. Dec. 2, 2016) (citing 42 U.S.C. § 1983); *see also West v. Atkins*, 487 U.S. 42, 48 (1988). "Section 1983 does not grant any substantive rights, but rather, 'provides only a procedure for redress for the deprivation of rights established elsewhere,' such as in the Constitution or

federal statutes." *Id.* at *2 (quoting *Sykes v. James*, 13 F.3d
515, 519 (2d Cir. 1993)).

## DISCUSSION

        As a preliminary matter, the court considers whether
matters outside the proposed amended complaint will be
considered in addressing defendants' argument that an amendment
would be futile.  Defendants attach several exhibits from
outside the pleadings in support of their opposition including:
plaintiff's response to defendants' interrogatories and requests
for document production dated May 22, 2019 (Def. Opp., Exhibit
A, ECF No. 45-1); Detective Bey's testimony at plaintiff's
second criminal trial, *People v. Rhian Taylor*, Indict. No. 475-
2008 (N.Y. Sup. Ct., Queens County) (Def. Opp., Exhibit B, ECF
No. 45-2) (Bey testified that he didn't have any description of
the shooter's facial hair, including whether the shooter was
clean shaven); deposition testimony of Detective Bey taken on
December 1, 2017 in plaintiff's New York State Court of Claims
action, *Rhian Taylor v. State of New York*, Claim No. 1133027
(Def. Opp., Exhibit C, ECF No. 45-3) (At his Court of Claims
deposition, Detective Bey could not recall whether the witnesses
said the shooter was clean shaven); a photograph taken of Mr.
Taylor while at the NYPD's 105th Precinct on the date of his
identification by Hilton and Turner in a lineup on August 15,
2008 (Def. Opp., Exhibit D, ECF No. 45-4)(showing a sizeable

goatee); and a transcript of the material witness hearing of Mr. Hilton dated April 14, 2008, *People v. Anthony Hilton*, Indict. No. 106-2008 (N.Y. Sup. Ct., Queens County) (Def. Opp., Exhibit E, ECF No. 45-5).  (Def. Opp. at 1-2.)

Plaintiff contends that the "Court should not consider such outside-the-pleadings evidence and decide the present motion on the proposed pleading alone."  (Pl. Reply 4.)  In his reply, Mr. Taylor has included his factual declaration (Pl. Reply, Exhibit A, ECF No. 47-2); photographs of Mr. Taylor that, among others, were provided in discovery (Pl. Reply, Exhibit B, ECF No. 47-3); and excerpts from Detective Bey's deposition testimony in plaintiff's New York State Court of Claims action, *Rhian Taylor v. State of New York*, Claim No. 1133027 (Pl. Reply, Exhibit C, ECF No. 47-4).

The court declines to consider documents from outside of the pleadings at this stage.  At the Rule 15 motion to amend stage, the court is restricted by the limitations of a Rule 12(b)(6) inquiry and may not consider outside exhibits without converting the motion into a motion for summary judgment.  The Second Circuit discussed this issue in *Goel v. Bunge, Ltd.*, finding:

> A complaint that alleges facts related to or gathered during a separate litigation does not open the door to consideration, on a motion to dismiss, of any and all documents filed in connection with that litigation.  A contrary rule would permit the improper transformation

> of the Rule 12(b)(6) inquiry into a summary-judgment proceeding—one featuring a bespoke factual record, tailor-made to suit the needs of defendants. Of course, the Federal Rules of Civil Procedure contemplate that when a district court is presented with materials outside the pleadings at the motion-to-dismiss stage, circumstances sometimes favor their consideration. If the court wishes to take account of such materials, however, the Rules oblige it to treat the motion as one for summary judgment under Rule 56 and give all parties a reasonable opportunity to present all the material that is pertinent to the motion.

820 F.3d 554, 560 (2d Cir. 2016)(internal citations and quotations omitted).

## I.   Fabrication or Withholding of Evidence

Plaintiff seeks to add a second cause of action alleging that Detective Bey failed to disclose multiple items of impeachment and exculpatory information provided by witnesses Hilton and Turner, in effect fabricating evidence by omitting evidence.  (PAC Redline, Exhibit B, ECF No. 43-4 at ¶¶ 129-135; Pl. Mem. 17-20.)  For the following reasons, the court finds that plaintiff alleges sufficient facts at the pleading stage to amend his pleading with the proposed second cause of action that Detective Bey suppressed exculpatory and impeachment evidence.

A claim for evidence fabrication requires that a plaintiff demonstrate that "an (1) investigating official (2) fabricate[d] information (3) that is likely to influence a jury's verdict, (4) forwards that information to prosecutors, and (5) the plaintiff suffers a deprivation of life, liberty, or

property as a result." *Garnett v. Undercover Officer C0039*, 838 F.3d 265, 279 (2d Cir. 2016) (citing *Ricciuti v. N.Y.C. Transit Auth.*, 124 F.3d 123, 130 (2d Cir. 1997) *aff'd*, 804 F.3d 538 (2d Cir. 2015)).  Plaintiff does not specifically identify evidence allegedly fabricated by Detective Bey.  Instead, plaintiff identifies numerous instances of the failure to disclose exculpatory and impeachment evidence.

Applying the *Garnett* factors, it is clear that, when drawing all reasonable inferences in plaintiff's favor, plaintiff's allegations against Detective Bey would survive the pleading stage.  Here, the first, fourth, and fifth *Garnett* factors are easily satisfied: Detective Bey is an investigating official who forwarded some of the information gleaned in his investigation to QCDA prosecutors, pursuant to which Mr. Taylor suffered a deprivation of liberty.

The second and third *Garnett* factors are a closer issue.  The second *Garnett* factor requires a showing that an investigating official fabricated information.  The court recognizes that in *Morse v. Fusto*, the Second Circuit held that "government officials may be held liable for fabricating evidence through false statements or omissions that are both material and made knowingly."  804 F.3d 538, 547 (2d Cir. 2015) (citing *Zahrey v. Coffey,* 221 F.3d 342, 348 (2d Cir. 2000)); *see also Davenport v. City of New York*, 2017 WL 4356883, at *18

(E.D.N.Y. Sept. 28, 2017) ("Fabrication of evidence by omission is one way to establish a fabrication of evidence claim."); *see also Maganiello v. City of New York*, 612 F.3d 149, 159 (2d Cir. 2010) (Finding that the integrity of the judicial process can be unlawfully compromised by a police officer's submission of information to a jury that implicates the accused based in part on material omissions.).  "Whether the fabricated evidence is likely to influence a jury's decision can be satisfied by showing that the fabricated evidence was material to the prosecutor's case." *Davenport*, 2017 WL 4356883, at *18 (citing *Garnett*, 838 F.3d at 277); *see also Harasz v. Katz*, 327 F. Supp. 3d 418, 435-36 (D. Conn. 2018) (collecting cases).

Taking the facts alleged in the proposed amended complaint as true at this stage, the court finds that plaintiff did not plead facts that Detective Bey fabricated any evidence, but instead plaintiff sufficiently pleads that Detective Bey withheld the following information from prosecutors and ultimately from the jury: (1) that Messrs. Hilton and Turner described the shooter as a clean shaven, heavyset black male who was not wearing glasses, PAC ¶¶ 126-130; and (2) that Mr. Turner was the leader of a violent youth gang. (*Id.* ¶ 134.)  As pleaded in the proposed amended complaint, plaintiff alleges that Detective Bey knew that the descriptions provided by the prosecution's only two witnesses raised doubts as to their

identification of plaintiff as the shooter.  However, plaintiff
alleges that the police report Detective Bey submitted to the
QCDA omitted Messrs. Hilton's and Turner's identification of the
shooter as a clean-shaven individual who did not wear glasses.
As a result, the court finds that it may draw a reasonable
inference in favor of the plaintiff at the pleading stage that
Detective Bey's suppression is equivalent to evidence
fabrication under Second Circuit law.

        The third *Garnett* factor requires a showing that the
fabricated information or omission of evidence would likely
influence a jury's verdict.  Plaintiff was acquitted by a jury
at his second trial after some portion of the withheld
information came to light and was presented at trial, including,
*e.g.*, complaint follow up ("DD5") forms demonstrating Mr.
Turner's involvement in a violent youth gang.  (PAC ¶ 357-361;
Pl. Mem. at 12-13.)  As a result, the court also finds that,
based on the facts alleged, it may draw a reasonable inference
in favor of plaintiff that, had the grand jury been presented
with the impeachment and exculpatory material that Detective Bey
allegedly withheld, it may not have indicted plaintiff in the
first instance.  Similarly, had the first trial jury been
presented with the impeachment and exculpatory material that
Detective Bey allegedly withheld, it may not have convicted
plaintiff.  As plaintiff's proposed amended complaint pleads

sufficient facts to satisfy the *Garnett* factors at this stage, the court permits the addition of plaintiff's proposed second cause of action that exculpatory and impeachment evidence was suppressed and withheld.

## II. Excessive Pre-Trial Detention

Plaintiff seeks to add a new and separate cause of action alleging two years of excessive pretrial detention before his first trial in violation of the Fourth Amendment and 42 U.S.C. § 1983. (PAC ¶¶ 122-23.) This claim is in addition to his claim in the original complaint alleging six years and nine months of postconviction unlawful detention between his first and second trials. (Compl. ¶ 96, ECF No. 1.) In total, in his proposed amended complaint plaintiff alleges eight years and nine months of excessive pretrial detention before his first and second trials. (PAC ¶¶ 122-23.)

To prevail on an excessive-detention, or *Russo*, claim, a plaintiff "must establish (1) that he has a right to be free from continued detention stemming from law enforcement officials' mishandling or suppression of exculpatory evidence, (2) that the actions of the officers violated that right, and (3) that the officers' conduct 'shocks the conscience.'" *Russo v. City of Bridgeport*, 479 F.3d 196, 205 (2d Cir. 2007) (quoting *County of Sacramento v. Lewis,* 523 U.S. 833, 846 (1998).

The court analyzes each of the *Russo* elements in turn.
Regarding the first two *Russo* elements, plaintiff alleges that
Detective Bey and ADA Ross, law enforcement officials,
mishandled or suppressed impeachment evidence in such a volume
that it amounted to exculpatory evidence.  (*See, e.g.,* PAC ¶¶
126-35, 184-265, 343-70, ECF No. 43-3.)  Plaintiff alleges that
Detective Bey and the City of New York, acting via the QCDA[1],
withheld multiple pieces of evidence, including evidence that:
witnesses Hilton and Turner "ruled out" plaintiff as the shooter
by describing the shooter as a clean shaven, heavyset black male
who did not wear glasses, *id.* ¶ 149; and that "rather than
having independently accused and identified Plaintiff as the
shooter, Turner and Hilton had discussed with each other what
had occurred and Turner, after falsely denying he knew where to
find Hilton, had then brought Hilton to [Detective] Bey to be
interviewed."  (*Id.* ¶ 150.)

In support of his position, plaintiff relies on *Newson
v. City of New York*, 16-cv-6773 (ILG) (JO), 2019 WL 3997466
(E.D.N.Y. Aug. 23, 2019) to argue that a similar logic should
apply in this case.  (Pl. Mem. at 9-15, ECF No. 43-2.)  In
*Newson*, the court found that the failure to turn over

---

[1]     As alleged in his initial complaint, plaintiff seeks to hold the City
of New York liable under *Monell* for the alleged misconduct of the Queens
County District Attorney's office and Assistant District Attorney Karen Ross.
(*See generally* Compl.; *see also Monell v. Dep't of Soc. Servs. of City of New
York*, 436 U.S. 658, 98 S. Ct. 2018, 56 L. Ed. 2d 611 (1978).)

potentially exculpatory ballistics evidence that implicated another potential shooter as the murder suspect, and also a cell phone belonging to the suspect discovered at the crime scene, while plaintiff was held in pretrial detention on murder charges, plausibly met the *Russo* factors at the Rule 12(b)(6) motion to dismiss stage. *Newson,* 2019 WL 3997466 at *3-4. Here, the proposed amended complaint alleges that the QCDA and Detective Bey withheld evidence that the prosecution's only two witnesses identified the shooter as a clean-shaven individual who did not wear glasses, while plaintiff had a beard and wore glasses. (Pl. Mem. 8-10.) Plaintiff argues that, much like the evidence withheld in *Newson* and *Russo* that called into question the true identity of the shooter, the "contemporaneous out-of-court description[s] that virtually rule[d] out plaintiff as the shooter" in plaintiff's case are similarly exculpatory, despite being impeachment evidence. (Pl. Reply 8.) The volume of suppressed exculpatory and impeachment evidence relating to the prosecution's only two witnesses, as alleged in plaintiff's amended complaint, may reasonably be inferred at this stage to be exculpatory in light of: (1) plaintiff's later release on bail before his second trial and (2) plaintiff's ultimate acquittal, as explained *infra*.

The court is persuaded that, if the judge in plaintiff's first trial were able to consider the undisclosed

impeachment and exculpatory information presented in plaintiff's proposed amended complaint, the judge may have granted a reasonable bail before plaintiff's first trial.  At the time of plaintiff's bail determination before his first trial, "the weight of the evidence against [plaintiff] in the pending criminal action and any other factor indicating probability or improbability of conviction" was a statutory factor the judge would have considered in deciding whether to grant bail.  N.Y. Crim. Proc. Law § 510.30 (McKinney 2010).[2]  Without reviewing the hearing transcript or other outside-the-pleadings evidence at this stage, the proposed amended complaint presents sufficient facts to raise a reasonable inference that the judge hearing plaintiff's bail application before his second trial granted plaintiff a reasonable bail upon the disclosure of a portion of this impeachment and exculpatory evidence.  (PAC ¶¶ 3, 157-59, 357-70, 372-77.)  At his second trial, a jury acquitted plaintiff based in part on the portion of the impeachment and exculpatory information that was disclosed at that time.  (*Id.*) The court thus draws a reasonable inference in plaintiff's favor as required at this stage that, had the impeachment and exculpatory information been disclosed prior to his first trial,

---

[2]     Plaintiff notes that since the 2019 reform of the bail laws, the weight of the evidence against the defendant is no longer a factor to be considered in setting bail.  *See* 2019 Sess. Law News of N.Y. Ch. 59 (S. 1509-C) (McKinney's) (Pl. Mem. 15).

plaintiff may have been released on bail and not detained. As a result of the foregoing, the court finds that plaintiff's claim satisfies the first two elements of the *Russo* analysis at the pleading stage.

Next, the court determines whether the officers' conduct satisfies the third *Russo* element and "shocks the conscience." *Russo*, 479 F.3d at 205. Plaintiff relies on *Newson* to argue that the withheld testimonial evidence from Messrs. Turner and Hilton shocks the conscience in a similar way as the withheld ballistic evidence and a cell phone did in *Newson*, *see supra*, as it implicates other potential shooters. (Pl. Mem. 15.) Defendants argue that the instant case is distinguishable from *Newson* because *Newson* involved physical exculpatory evidence, *i.e.*, shell casings from a gun related to other shootings committed by a third party and plaintiff's cellphone recovered at the scene of the shooting. (Def. Opp. 4-5; 2019 WL 3997466, at *4—5.) However, at the pleading stage, the court must view plaintiff's allegations in the light most favorable to plaintiff. In so doing, the court draws a reasonable inference that the volume of impeachment and exculpatory evidence plaintiff alleges that Detective Bey and the City of New York, acting via the QCDA, withheld, "shocks the conscience," because it may have resulted in plaintiff's earlier release on bail prior to the first trial, and prior to

plaintiff's bail application in the second trial.  *See Newson*, 2019 WL 3997466, at *6.

Defendants' arguments in opposition are unpersuasive. Defendants, citing *Husbands ex rel. Forde v. City of New York,* 335 F. App'x 124, 129 (2d Cir. 2009) (summary order) and *Wilson v. City of New York,* 480 F. App'x 592, 595 (2d Cir. 2012) (summary order), argue that plaintiff's amendments fail for futility as plaintiff "has not alleged...that any government officials intentionally withheld specific, non-testimonial, and readily verifiable evidence of his innocence of which they had sole custody" and that "no such evidence of plaintiff's innocence exists."  (Def. Opp. 2.)  *Husbands* and *Wilson* are distinguishable from plaintiff's claims.  First, setting aside its nonprecedential authority, *Husbands* is inapplicable to the instant case as the plaintiff there was "not subjected to lengthy pretrial detention," and was "given a prompt probable cause hearing."  *Husbands,* 335 F. App'x at *129.  Here, plaintiff was held for almost nine years before his acquittal. Defendants rely on *Wilson* for the proposition that an excessive-detention claim cannot survive when the allegedly exculpatory evidence is testimonial.  (Def. Opp. 4.)  The court finds *Wilson* unpersuasive; there, the court found that the undisclosed evidence, most of which was testimonial, "was conflicting," rather than being exculpatory, and "some of it specifically

identified Wilson as a non-shooter accomplice." *Wilson* 480 F. App'x at 595.  Here, plaintiff is entitled at this stage to the reasonable inference that the large volume of impeachment and exculpatory evidence identified in plaintiff's proposed amended complaint, irrespective of its testimonial nature, may have led the judge to set a reasonable bail before the first trial, or for a reasonable bail to be set even earlier before the second trial.

**CONCLUSION**

For the foregoing reasons, the court grants plaintiff's motion to file the proposed amended complaint. The parties are directed to meet, confer, and file a status letter informing the court how they wish to proceed by March 18, 2021.


**SO ORDERED.**

Dated:   March 4, 2021
         Brooklyn, New York

                                     _____/s/_____

                                     **Kiyo A. Matsumoto**
                                     United States District Judge